NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 24 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AECOM ENERGY AND CONSTRUCTION, INC., an Ohio corporation, | No. 19-55588 |
| Plaintiff-Appellee, | D.C. No. 2:17-cv-05398-RSWL-SS |
| v. | |
| MORRISON KNUDSEN CORPORATION, a Nevada corporation; et al., | MEMORANDUM* |
| Defendants-Appellants, | |
| and | |
| JOHN RIPLEY; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted March 15, 2021
Pasadena, California

Before: WATFORD, FRIEDLAND, and BENNETT, Circuit Judges.
Concurrence by Judge Friedland

---

\*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

The district court granted summary judgment to Plaintiff-Appellee AECOM Energy and Construction, Inc. ("AECOM") and awarded AECOM $1,802,834,672 ("$1.8 billion") in damages under the Lanham Act, 15 U.S.C. § 1117(a). Defendants-Appellants[1] appeal only the damages award. They also argue for the first time on appeal that AECOM lacks Article III standing. We have jurisdiction under 28 U.S.C. § 1291. We hold that AECOM has standing, and we reverse and remand the damages award.

We must determine whether AECOM has standing, even though Defendants-Appellants did not raise the issue below. *See Animal Prot. Inst. of Am. v. Hodel*, 860 F.2d 920, 923 (9th Cir. 1988). Defendants-Appellants argue that AECOM has failed to establish that it owned a legally protectable interest in the "Morrison Knudsen" name, trademarks, and attendant goodwill ("MK property"). Thus, according to Defendants-Appellants, AECOM has failed to show that it suffered an "injury in fact," a necessary element for constitutional standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). We reject Defendants-Appellants' argument because the record shows that the original entity that owned

---

[1] Defendants-Appellants are Morrison Knudsen Corporation, Morrison-Knudsen Company, Inc., Morrison-Knudsen Services, Inc., Morrison-Knudsen International, Inc., and Gary Topolewski.

the MK property became AECOM through various name changes.[2]  AECOM is

therefore the entity that always owned and still owns the MK property.

On summary judgment, we must "draw[] all justifiable inferences in favor of

the non-moving party."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771

F.3d 1119, 1125 (9th Cir. 2014).  Because the district court decided the damages

award on summary judgment, we review it de novo.  *Cf. Chao v. A-One Med.*

*Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003) ("Although we generally review a

district court's decision on liquidated damages for abuse of discretion, we review

the issue here, which was decided below on summary judgment, *de novo*." (citation

omitted)).

Under 15 U.S.C. § 1117(a), a plaintiff is generally entitled to a disgorgement

award equal to the defendant's profits derived from the infringing activity.  *Id.*  In

seeking such an award, it is the plaintiff's "burden to show with reasonable

certainty [the defendant's] gross sales from [the infringing activity]."  *Rolex*

*Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999).  AECOM's

only evidence establishing Defendants-Appellants' sales were three press releases.

These press releases announced that the EPA and the Bureau of Land

Management, the Blackstone Mining Group, and the Indonesian Infrastructure

---

[2] Contrary to Defendants-Appellants' argument, we are not limited to the summary judgment record in determining whether AECOM has standing.  *See Animal Prot. Inst. of Am.*, 860 F.2d at 924 n.6.

Partnership had awarded "Morrison-Knudsen" three construction contracts totaling $1.8 billion. Defendants-Appellants failed to dispute the accuracy of the press releases or AECOM's calculation of $1.8 billion in damages based on the press releases. Thus, the district court reasoned that Defendants-Appellants had failed to raise a genuine factual dispute as to the amount of damages and awarded AECOM $1.8 billion in damages.

Defendants-Appellants argue that the press releases failed to satisfy AECOM's burden of proving Defendants-Appellants' *sales* under § 1117(a) because the press releases "merely announce construction projects have been awarded," and fail to show that Defendants-Appellants completed any of the projects or received any revenue from the projects.[3] We agree. The press releases, viewed in the light most favorable to Defendants-Appellants, merely show that Defendants-Appellants had been awarded contracts; they do not show whether Defendants-Appellants completed (or even started) the projects or whether Defendants-Appellants received any payments under the contracts, much less

---

[3] We consider this argument even though Defendants-Appellants failed to raise it below because the district court necessarily considered it in granting the damages award. *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007) ("We need not resolve whether this issue was raised before that court because even if a party fails to raise an issue in the district court, we generally will not deem the issue waived if the district court actually considered it."). Because this argument is dispositive, we do not consider Defendants-Appellants' other arguments challenging the damages award or whether they waived those arguments by failing to raise them below.

almost $2 billion.[4] Thus, AECOM failed to carry its burden of establishing Defendants-Appellants' sales arising from their infringing activity, and the district court erred in granting the damages award.

The parties shall bear their own costs on appeal.

**REVERSED AND REMANDED.**[5]

---

[4] Even if we were to view the press releases in the light most favorable to *AECOM*, we doubt they would support an inference that there were "sales"—i.e., monies actually received—by Defendants-Appellants, in *any* amount, much less in the amount of $1.8 billion. And this is without even considering that there was no evidence in the record that Defendants-Appellants had started any of the claimed massive construction contracts or were remotely able to undertake any of the construction.

[5] We note that Defendants-Appellants failed to provide in discovery any reliable evidence of their sales, profits, or costs, despite court orders compelling them to do so. Our decision does not preclude the district court on remand from considering whether a discovery sanction is appropriate should AECOM seek such relief, such as a sanction focused on the evidentiary inferences that may be drawn from the defendants' refusal to produce relevant financial records. We express no opinion on whether any such sanction would be appropriate.



*AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, No. 19-55588

FRIEDLAND, J., concurring in the judgment:

I concur in the judgment because it appears that the district court did not understand that it had discretion to reduce the disgorgement award under 15 U.S.C. § 1117(a). I would reverse and remand for the district court to reconsider whether to exercise such discretion.

The Lanham Act states that plaintiffs shall be entitled to recover damages "subject to the principles of equity," and that "the court may in its discretion" alter awards based on profits "as the court shall find to be just." 15 U.S.C. § 1117(a); *see also Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1073 (9th Cir. 2015). The district court did not appear to recognize its duty to consider equitable principles or its discretion to reduce the disgorgement award if it determined that $1.8 billion would be excessive. *See* 15 U.S.C. § 1117(a). To the contrary, the district court stated that it was "restless . . . over the amount of damages," but Defendants-Appellants' "procedural failures left the [c]ourt with no clear avenue other than to rest upon the standards of civil procedure," which suggests that it may have felt bound to grant $1.8 billion or nothing. This error amounted to an abuse of discretion requiring a remand for reconsideration. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

1

But I respectfully disagree with my colleagues' conclusion that a summary judgment ruling granting some damages amount to AECOM was inappropriate—and, indeed, I believe that the damages amount the district court entered was within the range of options available for the court to consider in exercising its discretion. As the majority mentions only in passing, *see supra* note 5, the defining feature of this dispute has been what the district court aptly described as Defendants-Appellants' "lengthy history of bad faith litigation practices." Defendants-Appellants ignored multiple discovery orders, refused to appear for depositions, and ultimately failed to produce a single reliable business record from which AECOM could calculate damages. Unsurprisingly, AECOM's reliance on the publicly available press releases to meet its burden under § 1117(a) was the direct result of Defendants-Appellants' tactics. This context is important because "[r]equiring more precision than can be attained, especially where the impossibility of more precise ascertainment was the fault of the wrongdoer, would be inequitable and is not required." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1223 (9th Cir. 2010).

Critically, Defendants-Appellants failed to contest the press releases as evidence of their revenue. As the moving party on summary judgment, AECOM had the burden to prove that it was entitled to a disgorgement award. Fed. R. Civ. P. 56. AECOM submitted the press releases into evidence, and its statement of

2

uncontroverted facts in support of its motion for summary judgment included the fact that Defendants-Appellants had claimed to earn revenue totaling $1.802 billion. Given that Defendants-Appellants had stonewalled AECOM's every effort to ascertain information about their finances, it was reasonable for AECOM to assert that the publicly available press releases accurately reflected Defendants-Appellants' revenues—and Defendants-Appellants still had the opportunity to contest that assertion in opposition to summary judgment, as the local rules required them to do if they believed Plaintiff's asserted undisputed fact was untrue. *See* C.D. Cal. R. 56-2. But when Defendants-Appellants then filed a statement of genuine disputes of material facts in opposition to AECOM's motion, they raised no objection the asserted revenue fact. Nor did they otherwise deny winning the contracts or contest that they had received the revenue anticipated by the awards. Consequently, the district court was permitted to assume that this fact "as claimed and adequately supported by the moving party [was] admitted to exist without controversy." C.D. Cal. R. 56-3.

Even under the majority's reasoning, on remand the district court will have another opportunity to decide whether or how this case should proceed. I share the majority's opinion that the district court could consider entering discovery sanctions. *See supra* note 5. In my view, appropriate sanctions could even include a default judgment against Defendants-Appellants, if the district court deems it

3

justified.  *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (describing a five-part test to determine "whether a case-dispositive sanction under [Federal Rule of Civil Procedure 37(b)(2)] is just"). Especially if discovery abuses were what was already motivating the district court's reasoning, it would be preferable for the court to describe the sanctions it has chosen to impose in clear terms and explain the reasons for doing so.